UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FAIRLANE CAR WASH, INC., PJJ
ENTERPRISES, LLC, JOHN
MASOURAS and JAMES MASOURAS,

    Plaintiffs,

v.                                      Case No. 07-CV-10165

KNIGHT ENTERPRISES, INC.,

    Defendant.
                                        /

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION IN LIMINE AND DENYING DEFENDANT'S REQUEST TO INSTRUCT THE JURY ON WILLFUL DISREGARD OF THE PETROLEUM MARKETING PRACTICES ACT**

Pending before the court is Defendant Knight Enterprises, Inc.'s motion in limine, filed on March 24, 3008. The matter is fully briefed and the court concludes that a hearing is not necessary. *See* E.D. Mich. LR 7.1(e)(2). The court will, for the reasons stated below, grant the motion in part and deny it in part. The court will also deny Defendant's request to instruct the jury on exemplary damages.

## I. BACKGROUND

This case alleges breach of contract and violation of the provisions of the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801-06 ("the PMPA"). The court previously granted summary judgment to Plaintiffs with respect to liability, and now a trial to determine damages remains. Plaintiffs seek certain damages allegedly stemming from the parties' dispute, including lost profits during the period in which

Plaintiffs' gas station was shut down and benefit of the bargain damages for having lost a favorable profit margin for the expected life of the parties' now defunct contract.

### III. DISCUSSION

#### 1. Damages

Defendant argues that Plaintiffs in the course of discovery failed to properly disclose documents supporting their damage claims and, further, that they failed to even initially disclose the benefit of the bargain category of damages. Defendant claims that (1) Plaintiffs only produced a summary page listing total revenue lost in twenty-one days of shutdown and (2) they waited until February 2008 (well after the completion of discovery in November 2007) to first claim long-term lost profits for the life of the contract. Plaintiffs counter that (1) with respect to shutdown damages, they informed Defendant that supporting documentation is voluminous and available for inspection at Plaintiffs' premises and (2) that Plaintiffs did not know until the end of 2007 that the defunct contract was more lucrative than their new agreement and that they disclosed these damages when they first learned of them.

#### a. Shutdown Damages

Plaintiff was obligated to make an initial disclosure of "a computation of each category of damages claimed by the disclosing party - who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which each computation is based . . . ." Fed. R. Civ. P. 26(a)(1)(A)(iii).[1] Defendant

---

[1] The court quotes the newly effective Rules, which were recently redrafted stylistically; there are no substantive differences in the relevant provisions that the court will cite and quote.

made document requests in August 2006 pursuant to Rule 34 for all documents Plaintiffs intended to rely upon at trial, including all documents and data relating to alleged damages. (Def.'s Br. at 3.) Rule 34 provides that "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Rule 34 (b)(2)(b). Plaintiffs responded by referring Defendant to Plaintiffs' Rule 26(a) disclosures and informing Defendant that the underlying documentation is "voluminous" and "available for inspection at Fairlane's premises." (Resp. to Discovery Requests, Pls.' Br. Ex. 2.) The court finds that this response is adequate for purposes of Rule 34. Further, any prejudice is a consequence of Defendant's failure to inspect the supporting documentation, not Plaintiffs' failure to disclose it or otherwise make it available. Accordingly, the court will deny Defendant's motion as it pertains to shutdown damages.

### b. Benefit of the Bargain Damages

The court turns to the benefit of the bargain damages. Plaintiffs contend that their existence was not known until after 2007 and that Plaintiff made their damage demand known after a February 2008 status conference. (Pls.' Br. at 6-7.) They further contend that they offered Defendant the opportunity to inspect the supporting documentation and, to avoid any possibility of prejudice, were voluntarily compiling a summary of damages for Defendant and again extending an invitation to Defendant to inspect supporting documents at Plaintiffs' premises. (*Id.* at 7.)

Plaintiffs' complaint, which was filed on January 9, 2007, belies their claim that they were unaware of their benefit of the bargain damages until early 2008. The complaint alleges that "[b]ecause defendant Knight terminated the agreement, the

3

plaintiffs were forced to enter into an agreement with a different distributor, resulting in additional expenses and damages." (Compl. at ¶ 35.)  Lost benefit of the bargain is a foreseeable category of such "additional expenses and damages."  Indeed, Plaintiffs' theory for what motivated Defendant's breach was establishing a distribution formula that was more financially advantageous to Defendant than the existing Five Cent Margin Deal.  One could readily conclude that the market was not likely to bear a better or even an equal deal for Plaintiffs.  Finally, nothing before the court indicates that profit margins could only be calculated after the end of a calendar year.  Based upon the materials in the record already before the court, such an arrangement appears dubious, as monthly, weekly and even daily accounting of revenue appears to be the norm in the industry.

Further, the court finds that Defendant would be greatly prejudiced if Plaintiffs were allowed at this late juncture to seek benefit of the bargain damages.  While the complaint certainly put Defendant on notice that such damages might be part of the case, Plaintiffs' responses to discovery requests never provided Defendant with the necessary information and evidence in support of such damages, or an opportunity to access the same.  To mount a defense, a litigant must have notice and an opportunity to marshal, examine and challenge evidence.  Plaintiffs speculate that Defendant at earlier depositions was concerned with liability and not damages, and therefore Defendant need not conduct any follow-up depositions now that discovery is closed, because Defendant never would have questioned this area even if Defendant had the documents.  (Pls.' Br. at 7.)  It is not correct to assume how litigation might have proceeded had Plaintiffs equipped Defendant with the basis for the benefit of the bargain damages.  Under the circumstances, Defendant on the eve of trial would suffer

4

unfair surprise and potential liability. The court will therefore grant Defendant's motion with respect to benefit of the bargain damages.

### 3. Willfulness Under the PMPA

The parties also dispute whether the court or the jury should determine wilfulness under the PMPA. Plaintiffs' ability to recover exemplary damages hinges upon a finding of willful disregard of certain provisions of the PMPA. According to the statute:

> (1) If the franchisee prevails in any action under subsection (a) of this section, such franchisee shall be entitled–
>
> (A) consistent with the Federal Rules of Civil Procedure, to actual damages;
>
> (B) in the case of any such action which is based upon conduct of the franchisor which was in willful disregard of the requirements of section 2802, 2803, or 2807 of this title, or the rights of the franchisee thereunder, to exemplary damages, where appropriate; and
>
> (C) to reasonable attorney and expert witness fees to be paid by the franchisor, unless the court determines that only nominal damages are to be awarded to such franchisee, in which case the court, in its discretion, need not direct that such fees be paid by the franchisor.
>
> (2) The question of whether to award exemplary damages and the amount of any such award shall be determined by the court and not by a jury.

15 U.S.C.A. § 2805(d)(1). Defendant asserts that (1) Plaintiffs "presented no competent evidence" to support a claim of willful disregard and (2) the statute does not specifically state that the jury should not weigh credibility and decide willfulness as a factual matter before the court imposes exemplary damages. (Def.'s Br. at 11-12.) Defendant cites no cases where a court allowed a jury to determine willfulness in a PMPA case. Plaintiffs argue that (1) the statute clearly tasks the court with deciding willfulness and (2) cases show a "prevailing practice . . . that the court decides all issues related to

5

exemplary damages." (Pls.' Br. at 9-10.)

The court agrees that § 2805(d)(2) by its plain terms assigns the court "the question of whether to award exemplary damages and the amount of any such award." Were it otherwise, the court would abdicate the responsibility to find "whether" such an award is appropriate, as that determination completely hinges upon a finding of wilfulness. Defendant's argument invites the court to rewrite the statute to reassign half of the court's role to the jury, reserving for the court only the calculation of the amount of exemplary damages.

Further, the cases that Plaintiffs present are persuasive. In *Oparaocha v. Sun Co., Inc.,* 3 F. Supp. 2d 4 (D.D.C. 1998), the court determined, *after a jury verdict*, that the plaintiff proved the defendant's willful disregard of the PMPA and that exemplary damages were therefore appropriate. The court based its decision upon the plaintiff's proven theory that the defendant relied on pretext when it improperly terminated the franchise agreement in order to avoid navigating expected bankruptcy proceedings in the event that the plaintiff would file soon for bankruptcy. *Id.* This theory is similar to Plaintiffs' theory that Defendant sought any reason to terminate their agreement in order to end the financially disadvantageous Five Cent Margin Deal. The court therefore rejects Defendant's argument that Plaintiffs presented no competent evidence in support of their claim for exemplary damages. The court must hear all the evidence before it makes a final determination, but at this juncture it is clear that Defendant's assertion of a *complete* lack of evidence for Plaintiffs' exemplary damages claim is unfounded. Finally, the court notes that Plaintiff presents two unpublished cases that support this court's interpretation of the PMPA. *Coast Village, Inc. v. Equilon*

*Enterprises, LLC*, 64 Fed. App'x 36, 37 n.2 (stating that § 2805(d)(2) provides for determination of exemplary damages by the court, not the jury); *Marcoux v. Shell Products Co.*, No. 01-11300, (D. Mass., Sep. 19, 2005); 2005 WL 2323181 at *1 (holding "I am not convinced that defendants acted in willful disregard of the PMPA"). For these reasons, the court will determine whether exemplary damages are appropriate and, if so, in what amount. The court will deny Defendant's request to instruct the jury on willful disregard of the PMPA.

## IV. CONCLUSION

IT IS ORDERED that Defendant's motion in limine [Dkt. # 29] is GRANTED IN PART and DENIED IN PART. The motion is GRANTED with respect to Plaintiffs' benefit of the bargain damages. The motion is DENIED with respect to Plaintiffs' shutdown damages.

IT IS FURTHER ORDERED that Defendant's request to instruct the jury on willful disregard of the PMPA is DENIED. Exemplary damages under the PMPA are for the court to decide.

                                              S/Robert H. Cleland  
                                              ROBERT H. CLELAND  
                                              UNITED STATES DISTRICT JUDGE

Dated: April 24, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 24, 2008, by electronic and/or ordinary mail.

                                               S/Lisa Wagner
                                               Case Manager and Deputy Clerk
                                               (313) 234-5522