**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

FAIRLANE CAR WASH, INC., et al.,

        Plaintiffs/Counter-Defendants,

v.                                  Case No. 07-10165

KNIGHT ENTERPRISES, INC.,

        Defendant/Counter-Plaintiff.

_____/

**OPINION AND ORDER DENYING ATTORNEY MARK SMILEY'S MOTION FOR
ATTORNEY FEES TO ENFORCE LIEN AGAINST JUDGMENT AND MOTION FOR
APPELLATE ATTORNEY FEES, AND TERMINATING AS MOOT PLAINTIFFS'
MOTION TO STRIKE**

Pending before the court are two motions by attorney Mark Smiley seeking

attorney fees in this matter and Plaintiffs' motion to strike these two motions.  Oral

argument on the issues presented in these motions is unnecessary.  *See* E.D. Mich. LR

7.1(f)(2).  For the reasons that follow, Smiley's motions will be denied and accordingly

Plaintiffs' motion will be terminated as moot.

**I. BACKGROUND**

Plaintiffs filed a "Renewed Motion for Proceedings Against Surety" on November

30, 2010.  The court directed Plaintiffs to serve the motion on the surety, Travelers

Casualty and Surety Company of America, and to file proof of such service in a

December 22, 2010, order.  In the same order, the court set the matter for hearing.  The

court has entered a stipulation and order of the parties and surety that is likely to

resolve this motion.

On December 17, 2010, Smiley filed a "Notice of Attorney Lien," his first foray

onto the court's docket in this matter, in which he claims an interest in a judgment to be

paid to Plaintiffs based on alleged uncompensated work he performed for Plaintiffs'

counsel on appeal.  In his "Motion to Enforce Attorney Lien Against Judgment," filed

December 29, 2010, Smiley asserts that he is an "appellate specialist" with whom

Steven A. Matta, attorney for Plaintiffs, contracted to write Plaintiffs' brief in the

appellate litigation of the above-captioned matter that recently concluded before the

Sixth Circuit Court of Appeals.  Smiley asserts he had a prior existing professional

relationship with Matta, and that he agreed to write the brief at a rate of $70 per hour.

Under this agreement, Smiley says he billed Matta $5,495, Matta paid $2,500, and there

was some agreement between the two to defer the remainder of the payment until after

the appeal had concluded.  None of these agreements were reduced to writing.  Smiley

describes the "ongoing arrangement" as "an oral agreement – a hand-shake agreement

between two long-time (since late 1986) friends and former law partners."  (Mot. 5.)

Smiley's motion continues by arguing that since the price was an essential term

of the contract, under Michigan law, no contract exists and he is entitled to recover in

*quantum meruit*.  Relying on reported and purportedly reasonable billing rates and the

time it took him to write the brief, Smiley reaches the conclusion he is entitled to fees in

the amount of $19,625.  He asks for relief in the form of a perfected lien in that amount

incorporated into the judgment in this matter.

Six days after filing this motion, on January 4, 2011, Smiley filed a "Motion for

Appellate Attorney Fees."  In that motion he argues that the effect of granting the relief

sought would lead Matta to apply for an increase in total attorney fees, which could lead

to an increased judgment against Defendant.  In the interest of efficiency, he says, the

court should skip these interim steps and enter a judgment directly against Defendant

that includes these heightened attorney fees, which is purportedly authorized by attorney fee provision of the statute on which Plaintiffs' case was based, 15 U.S.C. § 2805(d)(1).  Smiley provides the court with legal grounds for why these additional fees would not be barred by the "mandate rule" and the "law of the case" doctrine.

On January 5, 2011, Plaintiffs, Defendant, and the surety filed a stipulation purporting to extend the time to file a response to Plaintiffs' renewed motion for proceedings against a surety, which has since been stricken by the court as improvidently filed, as parties may not stipulate to an extension of time without an order from the court.  The stipulation references a separate stipulation and proposed order, which has been entered and, as noted above, will likely resolve the dispute between Plaintiffs, Defendant, and the surety over satisfaction of the judgments in this matter. Smiley, taking note of this latter stipulation of which he was unaware, then filed a notice on the same day, which objects to the stipulation and proposed order, as such an order would frustrate the relief sought in his motions—to have Defendant or the surety pay the judgments through the court to ensure that Smiley is paid.

Unsurprisingly, the parties were still dissatisfied with the number of filings on the court's docket at the end of the day on January 5, 2011.  Accordingly, on January 6, 2011, Plaintiffs filed a motion to strike all of Smiley's filings—two notices and two motions for those keeping score.  Although Plaintiffs frame their motion as a motion to strike, in the accompanying brief they respond to the factual allegations and legal arguments Smiley raises in his motions and notices instead of only directing arguments at why the filings should be stricken.  In short, Plaintiffs say Smiley has no role in this matter, that "he was acting as a contracted law clerk," (Pls.' Mot. 2), that he has no

grounds for an attorney lien under Michigan law, that he has no standing, and that this court should decline to exercise supplemental jurisdiction.

With its stipulation stricken, the surety filed its response to Plaintiffs' renewed motion also on January 6, 2011. The response asks that upon the surety's payment to Plaintiffs, if any, the court enter "the appropriate release" and cancel the supersedeas bond. In particular, the surety seeks release from any liability to Smiley, and thus asks either to defer any payment until after the court has determined the proper payees or to deposit the funds in the registry of the court, such as in an interpleader action.

Finally, on January 10, 2011, Smiley filed a response to the motion to strike in which he attempts to rebut Plaintiffs' motion, elaborates on the legal authority presented in his motions, and supplements his arguments regarding why the motions should be granted and attorney fees awarded.

## II. DISCUSSION

Smiley primarily relies on *Kalyawongsa v. Moffett*, 105 F.3d 283 (6th Cir. 1997), in support of his argument that the court can and should exercise supplemental jurisdiction to enforce attorney fees contracts in cases decided by it.

> Lawyers are officers of the court. Their fees are part of the overall costs of the underlying litigation. Resolution of related fee disputes is often required to provide a full and fair resolution of the litigation. Unlike a state court judge hearing a separate contract action, a federal judge who has presided over a case is already familiar with the relevant facts and legal issues. Considerations of judicial economy are at stake. Thus, we hold that although attorneys' fee arrangements are contracts under state law, the federal court's interest in fully and fairly resolving the controversies before it requires courts to exercise supplemental jurisdiction over fee disputes that are related to the main action. The fact that the district court here incorporated the fee awards into the judgment by essentially perfecting a lien which it had the power to declare does not change this jurisdictional analysis.

4

105 F.3d at 287-88.  Thus, a federal district court is "require[d]" to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over an attorney fee controversy where the dispute is "related to the main action."

It is unclear whether the Sixth Circuit intended use of the word "requires" in *Kalyawongsa* to mean that a district court *must* take jurisdiction over an attorney fee dispute where it is related to the main action, as cases cited with approval in that opinion use permissive language, 105 F.3d at 287 (quoting *Curry v. Del Priore*, 941 F.2d 730 (9th Cir. 1991), and *Jenkins v. Weinshienk*, 670 F.2d 915 (10th Cir. 1982)), and § 1367(c) typically affords the district court discretion to decline jurisdiction, *see* H.R. Rep. No. 101-734, at 29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6875 (indicating that, under *Gibbs* and "current law, subsection (c) requires the district court, in exercising its discretion, to undertake a case-specific analysis"); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1968); *Kalyawongsa*, 105 F.3d at 286 ("[Section] 1367 incorporates the prior doctrines of ancillary and pendent jurisdiction and the cases interpreting and applying them.").

The court need not reach that question, however, because the court finds that the dispute raised by Smiley is not so "related to the main action" so as to constitute the same case or controversy, and therefore does not have jurisdiction here.  In *Stubblefield v. Truck Stops Corp. of America*, No. 96-5800, 1997 WL 397240 (6th Cir. July 10, 1997), the Sixth Circuit recognized that the proximity between the attorney fee dispute and the underlying action bears upon the jurisdiction of the court.  *Id.* at *2 ("Although the fact that Skelton [the attorney seeking fees] did not file the district court action makes the present case a lesser part of the 'same case or controversy' than

5

*Kalyawongsa*, we nonetheless believe that Skelton's motion for attorney's fees was related to the underlying action such that it was a part of the same case or controversy."). Smiley's claim is even more attenuated than was the attorney's claim in *Stubblefield*, as Smiley has never directly represented a party in this case. Smiley instead contracted with an attorney for Plaintiffs, but that agreement is one step removed from any party or person involved in this matter; privity of contract between Smiley and Plaintiffs is lacking. The attenuation of Smiley's claim is indicated in that the court was unaware of his existence until approximately one month ago when he filed his notice of attorney lien, after the district court's judgment had been entered, after the Sixth Circuit had decided the appeal, and after Plaintiffs began their action to recover from the surety. In sum, even if the *Kalyawongsa* court intended to make exercise of supplemental jurisdiction over attorney fee disputes by attorneys of record mandatory, that holding does not control a dispute raised by a stranger to the case, such as Smiley is here.

In addition, insofar as the court has discretion to exercise supplemental jurisdiction in this matter, it declines to do so. The primary concern of § 1367 in the context of attorney fees disputes, as recognized in *Kalyawongsa*, is judicial economy, which counsels against the exercise of jurisdiction here. The judicial economy contemplated by the *Kalyawongsa* court is served because a court that has presided over an action, having observed the attorneys' work product, is best acquainted with the factors relevant to a determination of attorney fees, including the time and effort involved in the case, the complexity of the matter, and the results obtained. Thus, it

6

would be wasteful to require a state court to also acquaint itself with such facts in order to adjudicate a *related* attorney fee dispute.

Here, by contrast, the federal court is aware only of the facts respecting the attorney fee dispute presented by Smiley and Plaintiffs in their motions.  Notably, this court did not preside over the appeal in this case, and so has not had the opportunity to directly observe the litigation on appeal.  If this court were to exercise jurisdiction in this case, it might be forced to learn about and resolve the factual disputes attendant to a contract action, such as: the nature and circumstances of the oral agreement, the course of performance of the parties, and statements made between Smiley and Matta, among others.  Moreover, the court might need to order discovery or conduct an evidentiary hearing.  In short, the court would be compelled to start from scratch in determining whether a contract existed, and if so what the terms of that contract were. If no contract was formed, the court would have to determine to what equitable recovery Smiley might be entitled.  Michigan courts are best positioned to make these determinations of Michigan law, and as this court has not invested any substantial effort in resolving the factual disputes underlying this state law claim, it will not deny them the opportunity, nor will the court delay the long-awaited satisfaction sought by Plaintiffs here by adjudicating an unrelated collateral matter.

Smiley's remedy on his state law contract action, if any, lies with the Michigan courts.  This court cannot, and even if it could, should not, exercise § 1367 jurisdiction over the matter.

Finally, the court declines the surety's invitation to take any of the actions requested in its response at this time.  The stipulation and order already entered by the

7

court appears to outline the parties' obligations, including those with respect to liability to Smiley, and therefore further direction from the court is not needed here.

Smiley's motions for attorney fees will be denied, and Plaintiffs' motion to strike will be terminated as moot.

### III. CONCLUSION

Accordingly, IT IS ORDERED that attorney Mark Smiley's motion for attorney fees to enforce lien against judgment [Dkt. # 97] and motion for appellate attorney fees [Dkt. # 98] are DENIED.

IT IS FURTHER ORDERED that Plaintiffs' motion to strike [Dkt. # 102] is TERMINATED AS MOOT.

        s/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: January 19, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 19, 2011, by electronic and/or ordinary mail.

        s/Lisa Wagner
        Case Manager and Deputy Clerk
        (313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\07-10165.FAIRLANE.DenyAttorneyFees.jmp.wpd